# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BAKER, Minors.

UNPUBLISHED
December 27, 2018

No. 344244
Wayne Circuit Court
Family Division
LC No. 07-475136-NA

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor children, JMB and MJB, under MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse), (g) (failure to provide proper care or custody), (j) (reasonable likelihood that child will be harmed if returned to the home of parent), (k)(*ii*) (criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate), and (k)(*ix*) (sexual abuse as defined in MCL 722.622). Respondent contends that the evidence did not support jurisdiction, that termination of his parental rights was not supported by clear and convincing evidence, and that termination was not in the children's best interest. We affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

This case arises from a complaint made to Child Protectives Services (CPS) against respondent in July 2017. Respondent was accused of sexually abusing AB, the minor daughter of respondent's children's mother. At the time of the complaint, respondent lived with his two minor children, JMB and MJB, their mother, who was respondent's fiancée, and their mother's daughter, AB. Respondent is not biologically related to AB. Nesrine Beydoun, a CPS investigator, arranged for AB to have a forensic interview through Kids Talk. During the interview, AB made detailed statements regarding respondent's sexual abuse of her. The nature of the accusations required Ms. Beydoun to file a petition seeking the termination of respondent's parental rights to JMB and MJB. She filed the petition on behalf of the Department of Health and Human Services ("DHHS" or "petitioner") on September 12, 2017. On the same day, the trial court authorized the petition, suspended respondent's visitation rights with JMB and MJB pending a psychological examination, and ordered that respondent not have contact with AB.

The combined adjudication and termination hearing that began on February 21, 2018, was quickly adjourned to March 14, 2018. When the hearing continued, AB testified that living with respondent was "bad" after her mother would leave for work. She said that whenever her

mother went to work, respondent would make her and JMB go upstairs and would lock them behind a sliding door that locked from the outside. If they had to go to the bathroom, they had to "pound on the door or scream [respondent's] name or stick our fingers through the backs of the door to get unlocked." She said this made her feel upset and scared and she thought that "no kid should be locked upstairs" and "should be able to open a door if they had to go to the bathroom."

AB further testified that when her mother went to work, respondent "raped me." She said that respondent would come into her room, undress her, lie on the bed with her, and "lick [her] private parts . . . [i]n between her legs." She identified this part as her "pussy." She said that he also touched her "pussy" with his finger, sometimes on the outside of her underwear and sometimes on the inside, on her bare skin. In addition, she testified that he once made her "suck his dick." She identified this as respondent's private part, which he uses to "pee." She said that she told him to stop but he would not listen, and that it made her feel scared to be around him.

AB also described how respondent anally penetrated her. She said that she would sometimes manage to unlock the sliding door and go to the bathroom in the middle of the night, and that respondent would tell her to go into the basement, where they would watch a few movies, "[a]nd then that's when it all happened." Respondent would get undressed and would make her get undressed and he "would put his dick in my butt." He first would put something clear that looked like sanitizer on his "dick" and "then he would put his dick in my butt." He would be "on his knees," she would be "in front of him . . . [f]acing away from him," and once he penetrated her, he would move "back and forth." She said that he did this more than one time and it made her body feel "weird, like it was made out of jello, like I was about to collapse." This happened when her mother was at work and JMB and MJB were in the house. Respondent told AB not to tell her mom.

Finally, AB described how respondent once made her touch him "[o]n his dick." She told the court, "[h]e made me go like this," making a gesture with her hand that petitioner's attorney described as "an up and down motion with her hands with her thumb and fingers making a circle." The court indicated that that was an accurate description of the witness's motion. Asked if anything came out when she was holding and rubbing respondent's penis up and down, AB said, "[t]his white stuff" came out. She testified that she was six years old the first time respondent touched her, and 11-years old when she finally told her mom about his actions.

AB testified that she was upstairs crying one day because she did not want her mother to go to work because of what was happening with respondent when her mother left. JMB ran downstairs to get their mother, and AB told her mother that respondent was raping her, and her mother told respondent to leave the house. AB admitted on cross-examination that she had been mad at respondent on the day she told her mother about the sexual abuse because respondent had yelled at her earlier for hitting JMB on the lip with a block.

Respondent called three witnesses on his behalf: his aunt; his brother; and himself. His aunt testified that she had observed respondent with his children and he did fine with them. She said he was good with children and had never done anything like he was accused of having done. His brother testified that he had lived with respondent, his fiancée, and the three children from May 2016 to August 2016, and that respondent met all his children's needs. He further testified

that he never saw respondent act inappropriately around AB. Testifying on his own behalf, respondent confirmed that he had yelled at AB after she hit JMB on the lip with a block, that AB was upset with him, and that she made the allegations to her mother a few hours later. He denied having any type of sexual contact with AB, denied locking AB or JMB in a room, and denied watching movies in the basement with AB. He testified that he was the primary caregiver for the children while their mother was working, and that he kept a clean house and attended to the needs of the children. He insisted that one or both of his brothers visited him every evening when the children's mother went to work.

The trial court found AB's testimony to be credible because of the specificity of her description of body parts and of respondent's actions during the sexual abuse. The court did not believe that AB simply made up the allegations because respondent yelled at her. The trial court determined that there was a preponderance of evidence for its exercise of jurisdiction, and that clear and convincing evidence established grounds to terminate respondent's parental rights pursuant to MCR 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). In addition, the trial court concluded that termination of respondent's parental rights was in the best interests of JMB and MJB. The court entered a corresponding order, and this appeal followed.

## II. ANALYSIS

## A. JURISDICTION

Respondent first argues that the trial court clearly erred in exercising jurisdiction over JMB and MJB. We disagree.

This Court reviews a "trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). Pursuant to MCL 712A.2, the court has

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . . [MCL 712A.2(b)(1) and (2).]

"Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App at 295.

A preponderance of the evidence supported the trial court's exercise of jurisdiction based on "an unfit home environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian." MCL 712A.2(b)(2). While the trial court did not specifically state the reasons for its finding of jurisdiction, the record is clear that jurisdiction was based on respondent's sexual abuse of AB, the half sibling of JMB and MJB. The trial court acknowledged that its decision turned on whether it believed AB or respondent, and concluded that AB's testimony was believable based on the terms she used to describe specific body parts and the detailed descriptions in recounting the instances of sexual abuse.

Respondent contends that the trial court erred in rendering its jurisdictional decision based solely on AB's testimony, without regard to respondent's testimony. Essentially, respondent challenges the trial court's credibility determination. However, "[i]t is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). On the contrary, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). Respondent further contends that the trial court erred in exercising jurisdiction over JMB and MJB based on anticipatory neglect because there was no evidence that he had abused JMB or MJB, and testimony established that he took excellent care of his children. Nevertheless, "[a] child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child." *In re Gazella*, 264 Mich App 668, 680; 692 NW2d 708 (2005), superseded by statute on other grounds as stated in *In re Hansen*, 285 Mich App 158; 774 NW2d 698 (2009), judgment vacated on other grounds 486 Mich 1037 (2010). In light of AB's testimony of respondent's sexual abuse, the trial court's determination that her testimony was credible, and our disinclination to displace the trial court's credibility determination, *In re HRC*, 286 Mich App at 459, we cannot say that the trial court clearly erred in exercising jurisdiction over JMB and MJB pursuant to MCL 712A.2(b)(2).

## B. STATUTORY GROUNDS

Respondent next argues that the statutory grounds for termination were not established by clear and convincing evidence. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews "the trial court's findings of fact under the clearly erroneous standard." *In re HRC*, 286 Mich App at 459; see also MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

The trial court found clear and convincing evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). Pursuant to MCL

712A.19b(3)(b)(*i*), a trial court may terminate a respondent's parental rights to a child if the court finds by clear and convincing evidence that:

> (b) The child or a sibling of the child has suffered physical injuries or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

In the case at bar, the trial court credited the testimony of AB regarding respondent's sexual abuse of her. She explained how respondent first touched her when she was six years old and continued to abuse her until she told her mother about the abuse when she was 11 years old. She described in disturbing language and specific detail how respondent licked and touched her between the legs, anally penetrated her, and made her masturbate him until "white stuff" came out. This abuse occurred when AB's mother was out of the house, but when her half-brothers, JMB and MJB, were in the house. Further, the trial court found a reasonable likelihood that, based on respondent's actions with AB, JMB and MJB would be at risk of injury or abuse if placed in respondent's care. Accordingly, the trial court concluded that clear and convincing evidence established statutory grounds for the termination of respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*).

Respondent argues that MCL 712A.19b(3)(b)(*i*) does not apply in this case because respondent is not a parent of AB. This argument is unavailing. As this Court has previously held, MCL 712A.19b(3)(b)(*i*) encompasses sexual abuse of a minor child's half-sibling. See *In re Jenks*, 281 Mich App 514, 517; 760 NW2d 297 (2008) ("Thus, as amended, MCL 712A.19b(3)(b)(*i*) sets forth a ground for termination in circumstances such as those presented here, in which respondent sexually abused a half-sister of the minor children who are the subject of the termination proceedings, regardless of the fact that respondent was not also a parent of that abused half-sister.") Therefore, MCL 712A.19b(3)(b)(*i*) applies to this case. Respondent's argument that there is no evidence that he abused JMB or MJB is similarly unpersuasive because his treatment of AB is probative of how he will treat AB's siblings. *In re HRC*, 286 Mich App at 460-461; see *In re Jenks*, 281 Mich App at 518.

Respondent next argues that there was no clear and convincing evidence that he sexually abused AB. However, as already indicated, the trial court found credible AB's explicit testimony about respondent's sexual abuse, and we will not displace the trial court's credibility determination. *In re HRC*, 286 Mich App at 460. Given the record in this case and the trial court's special opportunity to judge the credibility of the witnesses at the termination hearing, it cannot be said that the court's decision that clear and convincing evidence exists to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*) was clearly erroneous. Because petitioner needed to establish by clear and convincing evidence only one statutory ground for termination, MCL 712A.19b(3); MCR 3.977(E)(3), we need not address the remaining statutory grounds for termination.

## C. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that it was in the best interests of JMB and MJB to terminate his parental rights. We disagree.

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find that termination is in the child's best interests before it can order termination of parental rights. MCL 712A.19b(5). Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013).

"With respect to the trial court's best-interest determination, we place our focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent" and "the child's need for permanency, stability, and finality. . . ." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012) (citations omitted). A trial court may consider the entire record when evaluating a child's best interests. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). In this instance, the children remained with their mother.

The trial court did not clearly err in determining that termination of respondent's parental rights was in the best interest of JMB and MJB. AB's testimony provided compelling evidence of years of sexual abuse by respondent in the same home with his children. Child Protective Services (CPS) worker Nesrine Beydoun testified to her belief that JMB and MJB would be at risk if they were in the care of respondent, based on AB's allegations and her disclosures, and she found respondent neglectful; thus, it was her opinion that termination of respondent's parental rights was in the best interests of JMB and MJB. The trial court noted that while there was no evidence to suggest that respondent sexually abused JMB or MJB, the trial court believed that was a possibility. Additionally, AB testified that she feared something bad would happen to JMB or MJB if they were allowed to remain in respondent's custody. While the sexual abuse of AB was the only evidence the trial court used to determine that termination was in the best interest of the children, this Court is not left with the definite and firm conviction that a mistake has been made. *In re BZ*, 264 Mich App at 296-297. Therefore, the trial court did not clearly err in determining there was a preponderance of evidence that termination of respondent's parental rights was in the best interest of JMB and MJB.

Respondent argues that the trial court erred in basing its best interest decision on what may happen in the future, and that a possibility of harm is not sufficient. However, it was proper for the trial court to consider respondent's sexual abuse of AB when determining the best interests of JMB and MJB. See *In re Hudson*, 294 Mich App 261, 268-269; 817 NW2d 115 (2011) (noting the validity of considering the risk of both physical and emotion harm). Therefore, despite respondent not abusing JMB or MJB, the trial court could base its best interest decision on what might happen to JMB or MJB if left in respondent's care.

Respondent further argues that the trial court failed to take into consideration the testimony regarding his parenting abilities regarding feeding JMB and MJB, and keeping the

house clean. However, this Court "give[s] deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App at 459. The trial court did not find this argument persuasive in light of his concurrent sexual abuse of the children's half-sibling, and this Court defers to the trial court's determination.

Respondent also argues that there is little on the record as to the parental-child bonding, which he contends is an important consideration when determining the children's best interests. Respondent admits that there is no indication in the record as to whether he was consistent with supervised visits or any information as to the quality of his parenting time or his interaction or relationship with the children, and he thus submits that the trial court did not have sufficient information to make a reasoned determination as to the children's best interests. However, the trial court was not required to consider the children's bond to respondent. See *In re Olive/Metts*, 297 Mich App at 42 ("the court *may* consider the child's bond to the parent . . . .") (emphasis added). Therefore, the trial court did not clearly err by basing its best interest determination on the evidence presented for the statutory bases for termination.

Respondent finally argues that he need not have contact with AB to be a parent to JMB and MJB. While this may be true, respondent's argument misses the point of the best-interest analysis. "[T]o determine whether termination is in the child's best interests, the focus still remains on the child." *In re Moss*, 301 Mich App at 88. As stated above, the trial court did not clearly err by determining that termination of respondent's parental rights was in the best interest of JMB and MJB. The fact that respondent could theoretically parent JMB and MJB without having contact with AB was not persuasive to the trial court, and it does not convince this Court that the trial court erred in its best-interest determination. As pointed out by petitioner, as someone who sexually abused a minor who called him "dad," respondent would at a minimum be a dangerous role model for JMB and MJB. Thus, it was not clear error to conclude that it would be emotionally harmful to JMB and MJB if respondent maintained a relationship with them.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering